A98A0829. FIELD v. MASSEY.
(502 SE2d 349)

BIRDSONG, Presiding Judge.

David Field appeals a jury's award of $150,000 to Rita Massey on her claim that the defendant fraudulently represented to her that they were married.

The evidence shows that David Field, M.D. and Rita Massey, R.N. met in the early 1980s while working together at R. T. Jones Hospital in Canton, Georgia. At the time, Field was married to his second wife. In 1983, Field began leaving romantic notes on Massey's car and tried to initiate a relationship with her. Massey did not immediately respond to these advances, and it was approximately one year before she agreed to a romantic relationship with him. The parties began having sexual relations in late 1984 while Field was still married to his second wife. In 1985, Field separated from his second wife and rented his own home.

Massey testified that on June 8, 1986, Field gave her an engagement ring, told her that his divorce to his second wife was final and

that they could now be married. Although Massey was "in and out" of Field's rented home before June 5, 1986, they were not yet living together. At some point after June 8, 1986, the parties began living together. Field did sign a settlement agreement with his second wife on June 5, 1986. However, the divorce was not finalized until August 8, 1986.

On June 28, 1986, Field purchased undeveloped property located at 511 Olivia Lane, Ball Ground, Georgia, on which to build a home. The purchase price for the property was $20,000, and title to the property was placed in Field's name only. However, in order to purchase the property, it was necessary for him to borrow $6,000 from Massey's brother. At the time Field purchased the property, he was paying child support and alimony to his first wife which totaled $2,272.54 per month. He was also required to pay $1,300 per month in alimony to his second wife. Field admitted that his financial situation was strained.

According to Massey, Field asked her in September 1986 to make the first payment on the $6,000 loan from her brother which was due on September 12 or 15, 1986. She told him that she would not make the payment if her name was not on the title to the property, unless they were husband and wife. According to Massey, Field told her that they were indeed married and that they had been living the commitment of husband and wife since he gave her the ring on June 8, 1986. After this conversation, Massey testified that she made all of the payments on the $6,000 loan. Field does not dispute that Massey made these payments. In October 1986, Field obtained a construction loan, secured by the property, to build a home on the property. In February 1987, Massey and Field moved into the home and lived there together until February 1994.

During her relationship with Field, Massey paid approximately $6,000-$7,000 for windows, electrical work and hardwood floors for a 1991 addition to the home. She also paid to have the house painted inside and out. Field placed equity lines on the house and refinanced it twice during the time that he lived with Massey. It is undisputed that Massey did not receive any cash from the equity line or refinanced loans. During the eight years the parties resided together, Field acquired an interest in two medical buildings, two clinics, a bank, land and an investment company. By December 22, 1988, Field's net worth increased to $260,000, and by April 22, 1996, it had increased to $555,500.

According to Massey, Field gave her a wedding band for Christmas in 1990 and insisted that she wear it on her left ring finger with the engagement ring. Massey testified that whenever she raised the topic of a marriage ceremony throughout the relationship, Field would respond that they were already married and did not need a

piece of paper to prove it.

Field moved out of the home located at 511 Olivia Lane on February 15, 1994, after Massey refused to move out at his request in January 1994. Massey filed a divorce action against Field in Cherokee Superior Court on February 19, 1994. Massey dismissed that lawsuit without prejudice in June 1994 after Field denied in his answer that a marriage ever existed between them. On June 30, 1994, Field obtained an order requiring Massey to vacate the house before July 13, 1994, because title to the property was in his name. On October 15, 1994, Field married another woman.

On July 6, 1994, Massey filed this lawsuit against Field for fraud. On December 15, 1995, Massey amended her complaint to add a count alleging a common law marriage to Field and seeking a divorce. The trial court bifurcated the trial, and the jury was requested to determine in the first phase whether the parties were married through common law. After the jury determined that the parties were not married, the parties presented additional evidence to support Massey's fraud claim. The jury returned a verdict in favor of Massey totaling $150,000. *Held*:

1. In his first enumeration of error, Field claims he was entitled to a directed verdict on Massey's fraud claim after the jury determined that no common law contract of marriage existed in the first phase of the trial. Relying upon *Thorpe v. Collins*, 245 Ga. 77, 79 (263 SE2d 115), Field asserts that Massey "cannot recover in tort where she may not in contract." Field misinterprets *Thorpe*. In *Thorpe*, the Supreme Court of Georgia held that "[b]reach of promise to marry is a common law contract action which, although not codified, is apparently recognized in Georgia." Id. at 78 (1). However, "[a] promise to marry . . . is invalid if the promisee knows or should know that the promisor is already married, as the courts will not enforce a contract contravening the public policy of this state favoring stability in marriage. [Cit.] Therefore, a promise contingent on the divorce or death of a known spouse is not enforceable in the courts of this state." Id. After acknowledging the existence of this cause of action, the Supreme Court found that the plaintiff in *Thorpe* could not recover for either breach of contract or fraud because the plaintiff knew that the defendant was already married to someone else at the time he made the promises. Id.

Here, a breach of contract to marry claim by Massey would not be barred because the evidence shows that she believed that Field was already divorced when he gave her the engagement ring on June 8, 1986. See *Leonard v. Owen*, 125 Ga. App. 5, 6 (186 SE2d 506). Likewise, Field was free to marry in September 1986, when Massey claims he told her that they were already married as an inducement for her to make the payments on the $6,000 loan for the purchase of

the property.

Georgia recognizes a cause of action for fraud based upon misrepresentations about marital status. See *Perthus v. Paul*, 81 Ga. App. 133, 136 (58 SE2d 190); *Morgan v. Morgan*, 193 Ga. App. 302, 304 (388 SE2d 2). The trial court did not err in denying Field's motion for directed verdict.

2. In his second enumeration of error, Field claims that Massey's fraud claim must legally fail because she presented no evidence of "a subsequent contract to pool their individual income and assets independent of the parties' original agreement to live together." In support of this enumeration, Field relies upon a line of cases which hold that a contract based upon illegal or immoral consideration, such as cohabitation, cannot be enforced. See OCGA § 13-8-1; *Rehak v. Mathis*, 239 Ga. 541, 543 (238 SE2d 81); *Wellmaker v. Roberts*, 213 Ga. 740, 742 (101 SE2d 712); *Long v. Marino*, 212 Ga. App. 113, 114 (441 SE2d 475); *Samples v. Monroe*, 183 Ga. App. 187 (358 SE2d 273); *Liles v. Still*, 176 Ga. App. 65, 66 (335 SE2d 168). Field also relies upon the rebuttable presumption that "[w]here cohabitation between parties was illicit in its inception, the illicit relation will be presumed to have continued throughout the period of cohabitation, in the absence of proof to the contrary." *Lawrence v. Lawrence*, 86 Ga. App. 8, 9 (70 SE2d 549). According to Field, the jury's finding of no common law marriage affirmatively establishes that the illicit relation continued and therefore bars Massey from recovering in contract or tort.

We reject Field's novel attempt to avoid liability for his repeated misrepresentations to the plaintiff that they were in fact married. Field's theory hinges on the principle that "[one] may not in tort gain access to the courts where [one] may not in contract." *Thorpe*, 245 Ga. at 79. However, since we have already held that a claim for breach of contract to marry by Massey would not be barred, this principle does not apply and the foundation of Field's theory of no liability crumbles. Additionally, none of the authorities relied upon by Field holds that cohabitation bars a fraud claim based upon one of the cohabiting parties misrepresenting to the other that they are *presently* married. Compare *Samples*, 183 Ga. App. at 188 (fraud cannot be based upon promise to use savings for mutual benefit in future). Adopting Field's theory would overrule, in effect, existing law which allows fraud claims based upon misrepresentations about marital status. See *Perthus*, 81 Ga. App. at 136; *Morgan*, 193 Ga. App. at 304. This we decline to do.

3. In his third enumeration of error, Field claims that Massey failed to prove she reasonably relied upon Field's misrepresentations about their marital status. "While a party must exercise reasonable diligence to protect himself against the fraud of another, he is not

bound to exhaust all means at his command to ascertain the truth before relying upon the representations." *Johnson v. Sherrer*, 197 Ga. 392, 395 (29 SE2d 581). We find that the jury, as the trier of fact, was authorized by the evidence to find that Massey exercised the diligence required. Common law marriage was recognized in Georgia during Field and Massey's entire relationship. See OCGA § 19-3-1.1. This Court will not disturb a verdict if there is any evidence to support the verdict. *Horton v. Kitchens*, 259 Ga. 446 (383 SE2d 871).

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED MAY 11, 1998.

*Ford & Harrison, Patricia G. Griffith, Jeffrey D. Mokotoff*, for appellant.

*Dudley W. Garrett, Jr.*, for appellee.